# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-4013

_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Plaintiff - Appellee, | * |
| | * Appeal from the United States |
| v. | * District Court for the |
| | * Northern District of Iowa. |
| Daniel Torres-Lona, | * |
| | * |
| Defendant - Appellant. | * |

_____

Submitted: May 15, 2007
Filed: July 3, 2007

_____

Before MURPHY, HANSEN, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Daniel Torres-Lona entered a conditional plea of guilty to one count of making a materially false statement to federal immigration officers in violation of 18 U.S.C. § 1001. The district court[1] sentenced him to 171 days of time served. Torres-Lona appeals his conviction, arguing that the false statement that formed the basis of his indictment should have been suppressed. We affirm.

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

I.

In the spring of 2006 officers from the Cedar Rapids Police Department (CRPD) contacted Immigration and Customs Enforcement (ICE) to report that they had discovered evidence of gang activity in the course of investigating a possible burglary at the Cambridge Apartment Complex (complex). Several people interviewed during the investigation had what appeared to be gang related tattoos, and the number 13, a tag associated with Mexican gangs, had been carved into one of the walls of the complex. The CRPD also reported seeing blood in one of the apartments, which the officers believed to have resulted from a gang initiation rite.

Several ICE agents began working with the CRPD to investigate further. Among them was Special Agent Chris Cantrell who had worked as an immigration officer for 11 years including five years as a border patrol agent. He was also trained in investigating ethnic gangs and in interviewing undocumented aliens and other foreign nationals. ICE agents worked with the landlord of the complex to obtain documents provided by tenants when they first rented their apartments. Some of these documents proved to be counterfeit. ICE agents also learned that one of the tenants interviewed as part of the burglary investigation had falsely claimed United States citizenship.

ICE agents obtained federal search warrants to search various apartments in the complex based on probable cause that tenants there had possessed and used counterfeit immigration and social security documents. Agents executed search warrants at three apartments and obtained consent to search two additional apartments. Six undocumented aliens from Mexico were identified and arrested during these searches. ICE agents also found numerous counterfeit social security and immigration documents which did not match the aliens who had been arrested. Most of the seized documents appeared to belong to Hispanic males in their teens or mid 20s. During the searches agent Cantrell interviewed an unidentified man who admitted to calling

several of the Hispanic residents at the complex to warn them about the presence of immigration officials.

Special agents Cantrell and Eric Spaulding returned to the complex on May 24 to search for individuals who matched the fraudulent documents seized the day before. They were also looking for fresh signs of gang activity. When they arrived at the complex they noticed new graffiti in the parking lot which read, "Sur 13, fuck you." "Sur 13" is a gang tag identified with the Surenos gang.

The agents spotted Torres-Lona, a Hispanic male in his early twenties, walking nearby. He was wearing baggy pants, a large cubic zirconium earring, a brown bandana, and a cocked flatbilled cap.[2] Based on his experience, agent Cantrell regarded Torres-Lona's clothing and accessories as consistent with gang attire. The agents initially left the complex without interviewing him, but they decided to return in light of his attire and the appearance of new gang graffiti at the complex. Agents found Torres-Lona talking to the same man who the day before had warned residents about the agents' presence. When they asked to speak with Torres-Lona, he came over immediately. The agents asked him where he was born, and Torres-Lona responded that he was born in Mexico. Agent Cantrell then asked if he had any immigration documents. He replied that he did not. At that point the agents took him into custody.

One of the ICE agents searched Torres-Lona and located his wallet. Inside the wallet the agents found what appeared to be a valid social security card bearing the name "Daniel Torres." The final four digits of the number on the card were 5736, and the card was not signed. Agent Cantrell testified at a suppression hearing that an illegal alien could have a valid social security card if he had been lawfully admitted

---

[2]During processing Torres-Lona was also found to be wearing a belt buckle with a prominent number 13 inscribed on it.

into the United States and then deported or if he had had some previous immigration encounter. He also testified that the fact that the card was unsigned might indicate that it belonged to a child or that appellant had obtained it as a child and was not aware of his own immigration status. Agent Cantrell decided to do a further investigation into Torres-Lona's immigration status.

Agent Cantrell asked Torres-Lona if the social security card belonged to him. Cantrell did not give a Miranda warning before asking the question, and he testified at the suppression hearing that ICE agents generally do not administer such a warning when an illegal alien is being processed administratively rather than criminally. Torres-Lona responded that the card belonged to him and was valid. Cantrell then asked him whether he was employed. Torres-Lona said that he had been working through Sedona Staffing, an employment agency located several blocks from the complex. He claimed to have been employed under the name Daniel Torres. The questions Cantrell asked were part of a series of questions found on Form I-213 that ICE agents use to process suspected illegal aliens.

Before taking Torres-Lona to the ICE office, the agents drove him to the nearby office of Sedona Staffing to retrieve additional documents that might help verify his immigration status and indicate how he should be processed. The agents hoped to find a document containing an alien registration number. Agent Cantrell went into the office first and asked a staff member there whether Daniel Torres had ever worked for Sedona Staffing. She could not find any employee under that name or under the social security number ending in 5736 which appeared on the card in appellant's wallet. Cantrell then asked agent Spalding to bring Torres-Lona into the office. The staff member immediately recognized him and said that he had last worked for Sedona Staffing in 2003. She was still unable to locate his employee file using the name Daniel Torres and the social security number ending in 5736.

The agents then drove Torres-Lona to the ICE office, asking him more questions on the way about his work at Sedona Staffing. During this exchange, agent Cantrell told Torres-Lona that he thought he was not being truthful and that there were penalties for giving false information to federal law enforcement officers. According to Cantrell's testimony at the suppression hearing, it was at this point that he first thought that Torres-Lona might be charged with a crime.

Upon arrival at the ICE office, the agents placed Torres-Lona in the administrative processing area. Agent Cantrell advised appellant of his Miranda rights in Spanish and gave him a waiver form containing a Spanish version of the Miranda warning. Torres-Lona signed the waiver form. He then asked Cantrell how much time he would serve if he had lied, and Cantrell explained that this was a decision for a judge to make. Torres-Lona then admitted that he had lied previously about his employment with Sedona Staffing. He stated that he had been employed using the social security number on the card found in his wallet, but that he had used the name "Manuel Torres" rather than "Daniel Torres."

Agent Cantrell attempted to verify this new information. The employee at Sedona Staffing was able to locate Torres-Lona's file under the name "Manuel Torres," but she informed Cantrell that the social security number the agency had on file for him ended in 5365. This was not the same number that appeared on the card found in Torres-Lona's wallet or that he claimed to have used to obtain employment. When confronted with this information, Torres-Lona admitted he had purchased a counterfeit social security card and counterfeit resident card in 2003 in order to be able to obtain work.[3]

---

[3]The record does not indicate why he could not have used the social security card he already had in his possession to obtain work or how he obtained that card.

Torres-Lona was charged on May 25, 2006 with making a material false statement to immigration officers in violation of 18 U.S.C. § 1001. The false statement charged in the indictment was his claim that he "had previously worked at a Cedar Rapids business utilizing his assigned Social Security number, when in truth and fact, the defendant knew he had worked at the Cedar Rapids business by utilizing a fraudulent Social Security number."

Torres-Lona filed a motion to suppress the false statement charged in his indictment and other statements to the ICE agents as well as the social security card seized from his wallet. He argued that his arrest and the seizure of his wallet and its contents violated the Fourth Amendment and that his false statements were inadmissible as fruits of this illegal seizure. He also argued that his statements were inadmissible under the Fifth Amendment because the agents had failed to give him a Miranda warning before they initiated questioning and because any subsequent warning was ineffective in informing him of his rights.

After the magistrate judge recommended denial of the motion, Torres-Lona entered a conditional guilty plea on August 11, 2006. On October 23 the district court overruled the magistrate judge's recommendation in part and granted appellant's motion to suppress the evidence. The United States moved for reconsideration, and an additional hearing was held. The government used this new hearing in part to clarify the basis of Torres-Lona's indictment, which had been a source of confusion for the parties at the first suppression hearing. This confusion stemmed from the fact that Torres-Lona had made two false statements to ICE agents: his pre Miranda statement that he had used the name Daniel Torres to obtain employment when in fact he had used the name Manuel Torres, and his post Miranda statement that he had used the social security number found on the card in his wallet when he had actually used a different fraudulent number. The parties ultimately agreed that it was this latter post Miranda false statement that formed the basis of his indictment.

The district court set aside its initial suppression order and filed an amended and substituted order which granted defendant's motion to suppress in part and denied it in part. The district court concluded that the agents had probable cause to arrest Torres-Lona for entering the country illegally and therefore had authority to search him incident to that arrest. In response to Torres-Lona's Fifth Amendment argument, the court concluded that because the agents were at the complex investigating counterfeit social security documents, they should have known that questioning Torres-Lona about the validity of his social security card was likely to elicit an incriminating response. The district court therefore suppressed all custodial statements made by Torres-Lona before he was given a Miranda warning. The court determined that the failure to give a Miranda warning at the outset was not part of a deliberate effort to circumvent the law and that statements made by Torres-Lona after he had received his Miranda warning were therefore admissible. Because the indictment was based on a false statement made after the Miranda warning was given, the government could proceed with its prosecution despite the suppression of some evidence.

The district court subsequently sentenced Torres-Lona to 171 days with credit for time served. Appellant's counsel indicated at oral argument that Torres-Lona has since been deported but that his conviction could have a negative impact on him if he ever attempted to reenter the country.

II.

Torres-Lona appeals, arguing that the district court erred in denying his motion to suppress with respect to his post Miranda false statement. He urges two alternate grounds on which the statement should have been suppressed: that it was the product of an arrest that violated the Fourth Amendment and that the midstream administration of a Miranda warning was ineffective to protect his Fifth Amendment rights. The denial of a motion to suppress is reviewed de novo with its underlying factual

determinations reviewed for clear error. United States v. Carpenter, 422 F.3d 738, 744 (8th Cir. 2005).

A.

Torres-Lona first argues that his post Miranda false statement to ICE agents should be suppressed because it was obtained in violation of his Fourth Amendment rights. He contends that his arrest for violation of immigration laws was not supported by probable cause and that the fruits of this arrest, including the social security card seized from his wallet and all statements he made about his use of that card, are inadmissible under Wong Sun v. United States, 371 U.S. 471 (1963).

The district court's determination of probable cause is a legal conclusion reviewed de novo. United States v. Lakoskey, 462 F.3d 965, 972 (8th Cir. 2006). An officer has probable cause to make a warrantless arrest when the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense. Beck v. Ohio, 379 U.S. 89, 91 (1964). There need only be a "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity." United States v. Mendoza, 421 F.3d 663, 667 (8th Cir. 2005).

Torres-Lona argues that his admission to the agents that he was born in Mexico and did not have immigration documents did not give the agents probable cause to believe that he was an illegal alien. He contends that the agents had a responsibility to interview him further before making an arrest in order to determine if he had obtained citizenship or other lawful status.

Appellant's responses to Cantrell's questions were not the only basis for believing that he had likely entered the country illegally, however. Torres-Lona was found at an apartment complex known to house undocumented aliens. The agents had

-8-

arrested six such aliens in and around the complex the previous day. They had also found numerous counterfeit immigration and social security documents without being able to locate their owners. It was reasonable for the agents to assume that the undocumented aliens who matched these documents lived at the complex and had escaped detection the previous day only after being alerted by another resident to the presence of immigration officials. The agents saw Torres-Lona speaking with this same resident the next day, and Torres-Lona fit the profile of the individuals they were looking for in connection with the fraudulent documents.

When viewed in this context, Torres-Lona's statements that he was born in Mexico and had no immigration documents might be taken as an admission that he was an undocumented alien, especially in light of the agents' training and experience in immigration matters. See Mendoza, 421 F.3d at 667 (giving weight to special law enforcement training and experience). Given all of these circumstances, a reasonable person could have concluded that it was probable that Torres-Lona had unlawfully entered the country and was eluding immigration inspection in violation of 8 U.S.C. § 1325(a).

Torres-Lona suggests that the absence of probable cause should be inferred from Cantrell's testimony that at the time he took appellant into custody he did not believe that any charges would be brought against Torres-Lona. It was not until after questioning him further and investigating his employment history that Cantrell believed there might be grounds to prosecute him. Appellant's argument fails to consider significant aspects of the case. First, agent Cantrell did not state that he took Torres-Lona into custody believing that *no offense* had been committed, but rather that no *prosecutable offense* had been committed. At that time he anticipated that Torres-Lona would be processed administratively for deportation as a result of his undocumented status. Morever, the existence of probable cause is not dependent on an arresting officer's subjective belief. See United States v. Sledge, 460 F.3d 963, 967 n.3 (8th Cir. 2006).

We conclude that there was an objective basis to believe that Torres-Lona had violated immigration laws.  Because his arrest was lawful under the Fourth Amendment, the search of his person incident to that arrest was also permissible under the Fourth Amendment.  See United States v. Robinson, 414 U.S. 218, 235 (1973). The district court did not err in refusing to suppress evidence on this basis.

B.

Torres-Lona also argues that the statements he made to ICE agents while in custody should have been suppressed because he was not adequately apprised of his right not to answer questions and to have an attorney present.  See Miranda v. Arizona, 384 U.S. 436, 444 (1966).  A Miranda warning must be administered when a suspect undergoes custodial interrogation, id., which occurs when an officer's interaction with the suspect is "likely to elicit an incriminating response."  Rhode Island v. Innis, 446 U.S. 291, 301 (1980).  The district court determined that agents Cantrell and Spaulding should have known that questioning Torres-Lona about his social security card might elicit an incriminating response since they were investigating counterfeit social security documents.  It therefore suppressed all of the statements made between the time Torres-Lona was taken into custody and the time he received a Miranda warning at the ICE office.  The government has not challenged this portion of the district court's ruling, and we assume for purposes of this appeal that the agents should have administered a Miranda warning prior to questioning him about the social security card found in his wallet.

Torres-Lona contends that the district court erred in denying suppression of his post Miranda statement which led to his indictment.  The government does not dispute that he made this statement in the course of a custodial interrogation.  The only dispute is whether suppression is warranted even though the statement was made after administration of a Miranda warning.  Torres-Lona argues that the Miranda warning administered by Cantrell was not adequate to advise him of his rights because it was

not given at the outset of questioning. He notes that at the time the warning was given, the agents had already questioned him about his employment with Sedona Staffing and he had already made an incriminating false statement. In support of his argument he relies on <u>Missouri v. Seibert</u>, 542 U.S. 600 (2004), in which a divided Supreme Court held that the post Miranda statement there was inadmissible since the officer had deliberately delayed administering a warning in an effort to elicit a confession.

In <u>Seibert</u>, the officer first questioned a suspect without administering a Miranda warning and the suspect confessed. <u>Id.</u> at 604-05. A short time later he gave the suspect a Miranda warning but did not explain that her earlier statements could not be used against her. <u>Id.</u> at 605, 622. After confronting her with her earlier confession, the officer was able to elicit a second confession which was admitted at trial. <u>Id.</u> at 605-06. The Supreme Court held that it was inadmissible because the officer's interrogation technique rendered the Miranda warning ineffective. <u>Id.</u> at 617. The <u>Seibert</u> plurality offered a number of different factors, including the timing and content of the different stages of questioning, to be used to determine whether to admit a post warning statement made in the course of a two part interrogation. <u>Id.</u> at 615-16.

Justice Kennedy concurred in the result in <u>Seibert</u>, but wrote separately to express the view that the Court's reasoning would apply only to the intentional use of a two step interrogation process in an effort to circumvent Miranda requirements. <u>Id.</u> at 622 (Kennedy, J., concurring). Where there has been no such calculated effort, the admissibility of a post warning statement should continue to be governed by <u>Oregon v. Elstad</u>, 470 U.S. 298 (1985). <u>Seibert</u>, 542 U.S. at 622. In <u>Elstad</u> the Supreme Court held that a post warning confession is admissible so long as it was knowingly and voluntarily made. 470 U.S. at 309. We treat Justice Kennedy's concurrence as controlling since it provided the fifth vote necessary for a majority and since it was decided on narrower grounds than the plurality opinion. <u>See</u> <u>United States v. Briones</u>,

-11-

390 F.3d 610, 613 (8th Cir. 2004). Where a defendant alleges that his post Miranda statement was obtained in the course of a two part interrogation, the prosecution bears the burden of establishing by a preponderance of the evidence that the failure to provide warnings at the outset of interrogation was not deliberate. See United States v. Ollie, 442 F.3d 1135, 1142-43 (8th Cir. 2006).

In the present case the district court determined that the initial failure to warn appellant was "merely an oversight" on the part of the agents rather than a calculated strategy to circumvent Miranda. Agent Cantrell testified that he did not believe he was required to administer a Miranda warning when he took Torres-Lona into custody because he did not anticipate at that time that Torres-Lona would be charged with any criminal offense. Instead he believed that appellant would be processed administratively for deportation – a process in which he would have neither the right to an attorney nor the right to remain silent. This court has never definitively indicated the circumstances in which a suspected illegal alien must be given a Miranda warning, and we conclude it is not necessary here.

As the district court noted, there are several aspects that distinguish this case from the deliberate two step technique at issue in Seibert. The present case involves a post warning false statement rather than a post warning confession. While the officer in Seibert had an incentive to extract a confession from the suspect, see 542 U.S. at 621, the agents here had an interest in persuading Torres-Lona to answer their questions truthfully so that they could better understand his immigration status and how to process him properly for deportation. The officer in Seibert used the suspect's first statement to impeach her after belatedly giving her a Miranda warning in an effort to induce her to repeat the earlier unwarned admission. Id. at 605-06. Here there is nothing to suggest that the ICE agents confronted Torres-Lona with his prior false statement in an effort to have it repeated, nor was Torres-Lona's post Miranda statement identical to the one he made earlier. After learning that Torres-Lona's statements did not match the employee records at Sedona Staffing, agent Cantrell

warned him that he could be punished for lying. These circumstances are more consistent with an agent seeking to discover the truth about Torres-Lona's immigration status than one attempting to induce him to make another false statement. We cannot say that the district court's determination that the ICE agents acted in good faith was clearly erroneous. See United States v. Nunez-Sanchez, 478 F.3d 663, 668-69 (5th Cir. 2007).

Because the failure to warn in this case was not deliberate, Seibert is not implicated. See 542 U.S. at 622. The admissibility of Torres-Lona's post Miranda statement is instead governed by Elstad. Id. The district court determined that the statement was knowingly and voluntarily made, and Torres-Lona has not challenged this determination on appeal. Moreover, there is no evidence that any of his statements to ICE agents were coerced. We conclude that the district court did not err in denying appellant's motion to suppress with respect to appellant's post Miranda statement.

III.

Accordingly, we affirm the judgment of the district court.

_____