

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0606-09

---

**CARL ALLEN CARTER, Appellant**

**v.**

**THE STATE OF TEXAS**

---

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### WHEELER COUNTY

---

**COCHRAN, J., delivered the opinion of the unanimous Court.**

### OPINION

This case involves the distinction between "inadvertent" pre-*Miranda* questioning and

"deliberate" two-step questioning to avoid *Miranda* protections. At trial, the judge admitted

appellant's post-*Miranda* statements to the arresting officer even though the officer had

asked three questions before reading appellant his *Miranda* rights. The court of appeals

reversed, holding that the trial judge improperly admitted appellant's statements because they

were elicited during an illegal two-step interrogation.[1] The State contends that the court of appeals erred in substituting its assessment of the facts for that of the trial judge in holding that the officer had engaged in an illegal two-step interrogation technique.[2] Because we find that the record supports the trial judge's findings that (1) the trooper did not deliberately employ a two-step interrogation technique calculated to undermine appellant's rights, and (2) appellant's post-warning statements were voluntarily made, we reverse the court of appeals.

## I. Background

**A. Trial Proceedings**

On March 31, 2003, DPS Trooper James Henderson stopped a rental car driven by Craig Wills[3] for traffic violations. Appellant was in the passenger seat. The stop was captured by the patrol car's onboard video camera. Trooper Henderson requested Wills's

---

[1] *Carter v. State*, __ S.W.3d __, No. 07-07-0157-CR, 2009 Tex. App. LEXIS 2437, at *40-41 (Tex. App.—Amarillo April 1, 2009) ("Under the circumstances presented here, considering all of the relevant factors, it is clear that the *Miranda* warnings could not have functioned effectively. The two-step interrogation technique had the likely effect of undermining both appellant's ability to assert his right to remain silent and his ability to knowingly, voluntarily, or intelligently waive that right.")

[2] The State's ground for review is, "Whether the Court below erred in finding that both the pre- and post-*Miranda* statements made by appellant to a trooper were the product of an illegal two-step interrogation technique that undermined appellant's right to remain silent and his ability to voluntarily waive that right. This holding contravenes decisions from this Court, as well as the United States Supreme Court, and therefore calls for this Court to grant the State's Petition for Discretionary Review. *See*, TEX. R. APP. P. § 66.3(c)."

[3] The court of appeals spelled the driver's name as Craig "Willis," while the court reporter spelled it as "Wills."

driver's license and registration. Wills admitted that he did not have a driver's license, and appellant produced a rental contract showing that he had leased the car. Wills and appellant gave the trooper inconsistent stories as to the origin and nature of their trip.[4] Trooper Henderson asked if there were weapons or narcotics in the car. Appellant responded that he didn't think so, but that it was a rental car, so "you never know."

Appellant gave Trooper Henderson consent to search the car. While searching the trunk, Trooper Henderson saw that laundry detergent, which is commonly used to mask the odor of narcotics, had been sprinkled across the trunk's floor. He lifted the back seat and discovered two packages of cocaine hidden underneath. The trooper then arrested both Wills and appellant, and he put appellant in his patrol car.[5] On the way to the police station, appellant made incriminating statements about the offense in response to Trooper Henderson's questioning.

Appellant filed a motion to suppress, alleging that the statements were obtained in violation of his *Miranda*[6] rights. Trooper Henderson was the only witness at the suppression hearing. In addition to the above facts, he testified that, once appellant was in his patrol car, appellant was "advised of [his] *Miranda* rights. He, at that point in time on audio video,

---

[4] Wills explained that they were driving on I-40 through Wheeler County from Tucson, Arizona, where his brother played college basketball. Appellant said that they were coming from Phoenix, where they had stayed at a friend's house for two days' vacation.

[5] Wills was transported by another deputy.

[6] *Miranda v. Arizona*, 384 U.S. 436 (U.S. 1966).

waived his rights. I asked him if the cocaine was his, he did advise that the cocaine was both his and Mr. Wills. They had paid $8000 cash to purchase the drugs and were trying to make some money off it." Based on Trooper Henderson's testimony, the trial court denied appellant's motion.

At trial, the State offered the onboard videotape of appellant's arrest into evidence. The videotape showed that appellant was arrested, handcuffed, and placed in Trooper Henderson's patrol car where he could see deputies searching the car. Approximately nine minutes later, the trooper returned to the patrol car, and, as he began driving appellant to the police department, he asked the following:

Henderson:   Y'all know what you are under arrest for, right?

Appellant:   Yes, sir.

Henderson:   Is that cocaine or crack cocaine?

Appellant:   Cocaine.

Henderson:   It's cocaine?

Appellant:   Yes sir.

Appellant objected to these statements on the ground that he was in custody and had not yet been *Mirandized.* After initially overruling the objection, the trial court sustained it and instructed the jury to disregard those statements, but denied appellant's motion for mistrial. Appellant then objected to the admission of any further statements made after he

had been given his *Miranda* warnings, but the judge overruled that objection.[7] The prosecutor resumed playing the onboard videotape, which continued with Trooper Henderson's warnings.[8] The trooper testified that appellant acknowledged that he understood and waived his rights.[9] The videotape confirmed the facts to which Trooper Henderson had testified at the suppression hearing: In response to questioning, appellant admitted that (1) there were eighteen ounces of cocaine; (2) it belonged to both him and Wills; (3) they had picked it up in Phoenix; (4) they had paid $8,000 for it; and (4) they expected to turn a big profit selling it. A Department of Public Safety chemist then testified

---

[7] That objection and ruling was as follows:

Defense:    Your Honor, I'm going to object to any further statements based on
            the fact that he did it after he Mirandized, the prior statements he
            had already incriminated himself and this is just further indication
            of the fact that he was not – the statements were not voluntary and
            he had already violated the rules, which is not as good as –
Court:      Well, . . . my understanding of Miranda is . . . that if you don't give
            [the warnings] then nothing he ever says is admissible. It's
            anything he says prior to being Mirandized, once he's Mirandized
            would be admissible is my understanding of the rule.

[8] The trooper told appellant,

You have not been advised of your rights so you don't have to say no more and
I'll read your rights here in just a second. You are under arrest for possession of
cocaine. Anything you say can be used in a court of law; you have a right to stop
answering questions at any time; you have a right to an attorney; if you can't
afford one, one will be appointed for you. You understand all these questions I
covered with you today?

[9] Although we defer to the trial court's finding that appellant was properly *Mirandized*, we note that the record does not reflect that Trooper Henderson expressly requested a waiver of those rights. As has been suggested before, interrogating officers should request an express waiver of *Miranda* rights to avoid later litigation and the possible exclusion of incriminating statements. *See Joseph v. State*, ___ S.W.3d ___, No. PD-1111-08, 2010 WL 625072, at *5 (Tex. Crim. App. Feb. 24, 2010) (Cochran, J., concurring).

that the cocaine found in the rental car weighed 491.64 grams with a 67 percent purity.  The jury convicted appellant of possession with intent to deliver a controlled substance and sentenced him to twenty-five years in prison.

## B.  Proceedings in the Court of Appeals

Appellant raised seven issues on appeal, two of which related to his statements to Trooper Henderson.  The key issue was whether the trial judge erred in admitting appellant's post-*Miranda* statements.  The court of appeals abated the case for the trial judge to make findings regarding the voluntariness of appellant's statements.[10]  The trial court entered numerous findings in support of his ruling, including the following:

(13)  The Court finds beyond a reasonable doubt that Carter did then knowingly waive those rights and did then and there freely and voluntarily without being induced by any compulsion, threats, promises, or persuasion, confess orally on videotape . . .

(14)  The Court finds that there was no deliberate attempt to avoid the requirements of *Miranda* and Article 38.22 by Trooper Henderson when he asked the two questions that he did of Carter after Carter's arrest but before he was warned . . . and the Court further finds that the failure of Trooper Henderson to warn Carter before those two questions were asked was simply an oversight on the part of Trooper Henderson.

(15)  The Court finds that Trooper Henderson did not deliberately employ a two-step questioning technique in violation of *Miranda* and Article 38.22, and the Court further finds that Trooper Henderson's initial failure to warn Carter before obtaining the two incriminating responses that he did was inadvertent on his part.

(16)  The Court finds that the *Miranda* and Article 38.22 warnings given by Trooper Henderson after Carter's two inculpatory pre-warning admissions were effective, there was no carryover taint beyond the two unwarned admissions, and the warnings came at a time when Carter could still make a knowing, free, and voluntary choice to

---

[10] *Carter v. State*, 2008 Tex. App. LEXIS 3954, at *2 (Tex. App.—Amarillo, May 29, 2008) (not designated for publication) (citing TEX. CODE CRIM. PROC., art. 38.22, § 6).

make the further admissions that he did . . . .

On review after remand, the court of appeals concluded that the facts were "uncontroverted;" thus, it reviewed the trial court's ruling *de novo*.[11] Based on its assessment of the facts, the court of appeals held that "Trooper Henderson's two-step approach was a conscious choice, calculated to undermine Appellant's *Miranda* rights."[12] It then noted that the trooper did not administer any curative measures and that the unwarned and warned statements were made "during an undifferentiated single event."[13] Thus, the court of appeals held that the trial court erred in denying appellant's motion to suppress, and it found that the error was not harmless beyond a reasonable doubt.

On discretionary review, the State argues that the historical facts are not "uncontroverted." It contends that, although the videotape was helpful to resolve the factual issues, the trial court had an opportunity to view the witness and was "uniquely qualified" to determine Henderson's demeanor and credibility. That credibility issue, according to the State, is critical to this "question first, warn later" issue.

---

[11] *Id.* at *14-15.

[12] *Id.* at *32. The court of appeals pointed to the facts that (1) Trooper Henderson was "highly experienced;" (2) he began interrogating appellant within nine minutes of his arrest; (3) "[w]ithin three short questions spanning approximately seventeen seconds," appellant had confessed; (4) Henderson immediately *Mirandized* appellant and then resumed interrogation.

[13] *Id.* at *40.

## II.  "Question First, Warn Later" Legal Principles

### A.  *Oregon v. Elstad*

In *Miranda*, the United States Supreme Court explained that the issue of voluntariness "encompasses all interrogation practices which are likely to exert such pressure upon an individual as to disable him from making a free and rational choice."[14]  More recently, that Court stated that "the coercion inherent in custodial interrogation blurs the line between voluntary and involuntary statements, and thus heightens the risk" that the privilege against self-incrimination will not be observed.[15]  To minimize that risk, the *Miranda* Court conditioned the admissibility of any custodial confession on warning a suspect of his rights.[16]  Failure to provide the warnings and obtain a waiver prior to custodial questioning generally requires exclusion of statements obtained.[17]

But *Oregon v. Elstad*[18] governs the admissibility of post-warning confessions made after inadvertent, minimal *Miranda* violations.  In that case, the Supreme Court explained that "there is no warrant for presuming coercive effect where the suspect's initial inculpatory

---

[14] *Miranda*, 384 U.S. at 464-65.

[15] *Dickerson v. United States*, 530 U.S. 428, 435 (2000).

[16] *Miranda*, 384 U.S. at 467.

[17] *Id.*

[18] 470 U.S. 298 (1985).

statement, though technically in violation of *Miranda*, was voluntary."[19]   Thus, "a suspect

who has once responded to unwarned yet uncoercive questioning is not thereby disabled from

waiving his rights and confessing after he has been given the requisite *Miranda* warnings."[20]

In upholding the admission of Elstad's post-*Miranda* statements, the Court concluded that

there were "none of the earmarks of coercion" in that particular factual situation and that the

officer's initial failure to warn was merely an "oversight."[21]

## B.  *Missouri v. Seibert*

The Supreme Court clarified its approach to "question first, warn later" situations in

*Missouri v. Seibert*.[22]   In that case, officers were acting under express orders to withhold

*Miranda* warnings from Seibert, who was charged with murder.[23]   An officer questioned

Seibert for thirty to forty minutes at the police station while squeezing her arm and repeating

incriminating statements in an attempt to have her confess.  Seibert eventually did confess;

only then did the officers give her *Miranda* warnings and ask her to repeat her earlier,

---

[19] *Id.* at 318.  The evidence showed that officers went to Elstad's home to arrest him on a burglary charge.  During a "brief stop" in Elstad's living room, officers asked him if he knew why they were there.  Elstad said "No."  An officer told him that he "felt" that Elstad was involved, and Elstad responded that he "was there."  Officers transported him to police headquarters, *Mirandized* him, and he gave a confession.  *Id.* at 301.

[20] *Id.* at 318. The Court explained that the "psychological impact" of prior statements that "let the cat out of the bag," without more, does not compel the conclusion that a subsequent confession was involuntary. *Id.* at 311-12.

[21] *Id.* at 316.

[22] 542 U.S. 600 (2004).

[23] *Id.* at 604.

unwarned confession.[24]

Although the Court echoed the *Elstad* proposition that not every violation of *Miranda* requires suppression of a later confession, it determined that, under these circumstances, the post-admission warnings did not serve their purpose. A plurality of the Court noted that, by any objective measure, this police strategy was adapted to undermine the efficacy of *Miranda* warnings.[25] The plurality applied an objective, multifactor test to determine whether midstream warnings could have been effective to accomplish the goals of *Miranda*[26] and concluded that "a reasonable person" in Seibert's position "would not have understood [the warnings] to convey a message that she retained a choice about continuing to talk."[27]

The crucial fifth vote was that of Justice Kennedy, who wrote a concurring opinion. Although he agreed that the interrogation technique used with Seibert undermined the goals of *Miranda* and thus required suppression,[28] he noted that the plurality "envisions an objective inquiry from the perspective of the suspect, and applies in the case of both

---

[24] *Id.* at 604-05. After a twenty-minute break, the interrogator Mirandized Seibert, then confronted her with her prewarning statements, prompting her to repeat her earlier confession.

[25] *Id.* at 616. In a footnote to this conclusion, the plurality explained that "[b]ecause the intent of the officer will rarely be as candidly admitted as it was here . . . the focus is on facts apart from intent to show the question-first tactic at work." *Id.* at n.6.

[26] *Id.* at 615 (those factors included "the completeness and detail of the questions and answers in the first round of interrogation, the overlapping content of the two statements, the timing and setting of the first and the second, the continuity of police personnel, and the degree to which the interrogator's questions treated the second round as continuous with the first.").

[27] *Id.* at 617.

[28] *Id.* at 618 (Kennedy, J., concurring).

intentional and unintentional two-stage interrogations."[29]  Concluding that "this test cuts too broadly," he "would apply a narrower test applicable only in the infrequent case . . . in which the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning."[30]  He explained that, in such cases, post-warning statements must be excluded unless "curative measures" are taken before the post-warning statement is made.[31]  Unless a deliberate two-step strategy is employed, *Elstad* applies.

In sum, the *Seibert* plurality set out an objective, totality-of-the-circumstances inquiry to determine the effectiveness of midstream *Miranda* warnings and focused on the perspective of a reasonable person in the suspect's shoes irrespective of an officer's intent. Justice Kennedy, the fifth vote, would apply the plurality's objective inquiry only after finding that the officer deliberately used a two-step, "question first, warn later" strategy.  In short, the plurality's test is an objective "effects" one, while Justice Kennedy's is a subjective "intent" one that precedes (and potentially precludes) the effects analysis.

## C.  *Martinez v. State*

---

[29] *Id.* at 621.

[30] *Id.* at 622 (Justice Kennedy reasoned that "*Miranda*'s clarity is one of its strengths, and a multi-factor test that applies to every two-stage interrogation" would undermine that clarity).

[31] *Id.* ("Curative measures should be designed to ensure that a reasonable person in the suspect's situation would understand the import and effect of the *Miranda* warning and of the *Miranda* waiver.  For example, a substantial break in time and circumstances between the prewarning statement and the *Miranda* warning may suffice in most circumstances, as it allows the accused to distinguish the two contexts and appreciate that the interrogation has taken a new turn.").

This Court first applied *Seibert* in *Martinez v. State,*[32] in which the arresting officers did not *Mirandize* the defendant before questioning him at the police station. After subjecting Martinez to a three- to four-hour polygraph examination, the officers told him that he had failed the examination.[33] He later received *Miranda* warnings from a magistrate and gave a videotaped statement. This Court, echoing Justice Kennedy's *Seibert* concurrence, concluded that "'the two-step interrogation technique was used in a calculated way to undermine the *Miranda* warning.'"[34] We noted that this "question first, warn later" technique was "not a mistake based on the interrogating officers' mistaken belief that appellant was not in custody, but rather a conscious choice."[35] We then addressed whether the record showed curative measures as drawn from both the *Seibert* plurality and concurring opinions.[36]

In *Martinez*, we did not explicitly adopt either the plurality or concurring opinion from *Seibert*. But it is well settled that "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the

---

[32] 272 S.W.3d 615 (Tex. Crim. App. 2008).

[33] *Id.* at 617-18.

[34] *Id.* at 623 (quoting *Seibert*, 542 U.S. at 621 (Kennedy, J., concurring)).

[35] *Id.* at 624.

[36] *Id.* at 626-27.

narrowest grounds."[37] We therefore join numerous state and federal jurisdictions in adopting Justice Kennedy's concurrence in *Seibert* because it is narrower in scope than the plurality opinion and applies only to two-step interrogations involving deliberate police misconduct.[38] Consequently, the question is whether the evidence shows that Trooper Henderson deliberately employed a two-step "question first, warn later" interrogation technique to circumvent appellant's *Miranda* protections.

---

[37] *Marks v. United States*, 430 U.S. 188, 193 (1977) (internal quotation omitted); *see also Haynes v. State*, 273 S.W.3d 183, 186-87 (Tex. Crim. App. 2008).

[38] *See United States v. Nunez-Sanchez*, 478 F.3d 663, 668 n.1 (5th Cir. 2007) ("In *Missouri v. Seibert*, Justice Kennedy provided the fifth vote in a 5-4 decision, and decided the case on narrower grounds than the majority. 'It is well established that when we are confronted with a plurality opinion, we look to that position taken by those Members who concurred in the judgments on the narrowest grounds.' Therefore, we find *Seibert*'s holding in Justice Kennedy's opinion concurring in the judgment."), (quoting *United States v. Courtney*, 463 F.3d 333, 338 (5th Cir. 2006)); *United States v. Torres-Lona*, 491 F.3d 750, 758 (8th Cir. 2007) ("We treat Justice Kennedy's concurrence as controlling since it provided the fifth vote necessary for a majority and since it was decided on narrower grounds than the plurality opinion."); *United States v. Carter*, 489 F.3d 528, 536 (2d Cir. 2007) ("We now join our sister circuits in holding that *Seibert* lays out an exception to *Elstad* for cases in which a deliberate, two-step strategy was used by law enforcement to obtain the postwarning confession."); *State v. Fleurie*, 968 A.2d 326, 333 (Vt. 2008) (citing *Marks* and adopting Justice Kennedy's concurrence as the narrower holding; "Under Justice Kennedy's test, the threshold inquiry is whether the police intentionally withheld *Miranda* warnings to circumvent its protections. If warnings were not intentionally withheld, both Kennedy and the *Seibert* plurality would apply the *Elstad* framework.") (citation omitted); *State v. Gaw*, 285 S.W.3d 318, 323-24 (Mo. 2009) ("[T]his Court determines that Justice Kennedy's 'deliberate violation' standard represents a 'lowest common denominator' between his views and those of the four-justice plurality. This Court accordingly joins numerous other courts that have held that Justice Kennedy's concurring opinion supplies the standard to be applied"), *cert. denied*, 2010 WL 58585 (2010); *Tengbergen v. State*, 9 So. 3d 729, 735 (Fla. Ct. App. 2009) ("Florida courts have heretofore applied Justice Kennedy's rule, as it represents the narrower view."); *but see United States v. Heron*, 564 F.3d 879, 884-86 (7th Cir. 2009) (noting that Justice Kennedy's approach was "different" from that of the plurality, not narrower, and thus "it is risky to assume that the Court has announced any particular rule of law," but finding it unnecessary to resolve what rule can be gleaned from *Seibert* as the defendant's statements would be admissible under "any test one might extract").

## D. Standard of Review

As an initial matter, we note that Justice Kennedy provided no guidance on how to conduct or review a deliberateness determination. We thus consider how various courts have treated such issues.[39] In *United States v. Stewart*, the Seventh Circuit noted that "[t]here is not yet a general consensus among the circuits about the standard of review that applies to *Seibert*-deliberateness determinations, but the trend appears to be in the direction of review for clear error."[40] It explained that the "question of whether the interrogating officer deliberately withheld *Miranda* warnings will invariably turn on the credibility of the officer's testimony in light of the totality of the circumstances surrounding the interrogation. This is a factual finding entitled to deference on appeal" and reviewed only for clear error.[41] Numerous other jurisdictions have applied this same standard to the "deliberateness"

---

[39] One of the Supreme Court's earlier cases that addressed the trial court's critical role in assessing "intent" was *Anderson v. Bessemer City,* 470 U.S. 564, 573 (1985), in which the Court held that "a finding of intentional discrimination is a finding of fact." Thus, the standard of review of a trial court's finding of intent "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." *Id.* at 575. Factual findings concerning intent or deliberateness should not be disturbed by an appellate court absent contradicting extrinsic evidence or internal inconsistencies that render testimony "implausible on its face." *Id.* This standard is similar to our "great deference" standard of review for all factual findings, including intent, if such findings are supported by the record. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (appellate courts should afford almost total deference if the resolution of an ultimate question turns on an evaluation of credibility and demeanor).

[40] 536 F.3d 714, 719 (7th Cir. 2008).

[41] *Id.* at 720-21 (holding that, despite plausible alternative explanations, the district court's determination that the officer did not engage in deliberate sequential interrogation was not clearly erroneous.).

question in addressing "question first, warn later" scenarios.[42] As one state court has noted,

the trial judge's assessment of the interrogating officer's subjective intent is especially

important under Justice Kennedy's approach in *Seibert*:

> By adopting Justice Kennedy's subjective test as opposed to the plurality's objective test, the role of trial courts in this state is heightened to ensure that the accused's *Miranda* rights are protected. This is because the accused's *Miranda* rights protections turn on whether the trial court finds an arresting officer's questioning prior to the advisement of *Miranda* rights was inadvertent or intended to acquire an advantage in the interrogation process. A specific factual finding in this regard greatly assists the Court on appellate review.[43]

We therefore adopt the position of those federal and state courts that have applied a highly

---

[42] *United States v. Narvaez-Gomez*, 489 F.3d 970, 974 (9th Cir. 2007) (applying clear-error standard of review); *United States v. Nunez-Sanchez*, 478 F.3d 663, 668-69 (5th Cir. 2007) (without deciding the matter, appearing implicitly to apply clear-error review); *United States v. Naranjo*, 426 F.3d 221, 226, 232 (3d Cir. 2005) (applying clear-error standard of review); *United States v. Mashburn*, 406 F.3d 303, 309 (4th Cir. 2005) (applying clear-error standard of review); *Ford v. United States*, 931 A.2d 1045, 1052-52 (D.C. 2007) (applying clear error to the trial court's findings on remand, noting that it was consistent with its review of similar trial court determinations involving credibility and deliberateness).

In *United States v. Torres-Lona*, 491 F.3d 750 (8th Cir. 2007), the district court stated that the agents conducting a custodial interrogation should have known that their questions were likely to elicit an incriminating response, so it suppressed the defendant's unwarned statements. However, the district court also noted that "the initial failure to warn appellant was 'merely an oversight' on the part of the agents rather than a calculated strategy to circumvent *Miranda*." *Id.* at 758. The Eighth Circuit held that "the district court's determination that the [] agents acted in good faith" was not "clearly erroneous" and upheld the admission of the post-*Miranda* statements. *Id.*

[43] *State v. Gaw*, 285 S.W.3d 318, 324 (Mo. 2009) (officer arrested defendant after confronting him about having marijuana and defendant produced a baggie of marijuana; during post-arrest, pre-*Miranda* questioning, defendant made incriminating statements; upholding trial court's denial of motion to suppress post-warning statements because the unwarned questioning was not part of a deliberate plan to undermine defendant's understanding of *Miranda* rights), *cert. denied,* 2010 U.S. LEXIS 346 (2010).

deferential review–similar to our *Guzman* standard[44]–of the question of an officer's subjective "deliberateness" in the "question first, warn later" context.

### III.  Application

**A.  *Seibert*-deliberateness determination**

In this case, the court of appeals concluded that credibility and demeanor were not issues because "the facts regarding the interrogation were preserved on videotape and are completely uncontroverted."[45]  It thus reviewed the efficacy of the midstream warnings *de novo*.[46]  We note two problems with this approach.  First, a trial court's determination of historical facts based on a videotape recording is still reviewed under a deferential standard.[47]

---

[44] *See* note 39 *supra.*

[45] *Carter*, __ S.W.3d at __, 2009 Tex. App. LEXIS 2437, at *15.

[46] *Id.*

[47] *See Montanez v. State*, 195 S.W.3d 101 (Tex. Crim. App. 2006).  In *Montanez*, we addressed the standard of review involving a videotape of a traffic stop and subsequent search in which the issue was voluntary consent.  We noted that, "in *Anderson v. Bessemer City*, the Supreme Court held that appellate courts should review a trial court's determination of historical facts under a deferential standard, even if that determination was not based on an evaluation of credibility and demeanor." *Id.* 108-09 (internal quotation marks omitted).  Therefore, we held that "the deferential standard of review in *Guzman* applies to a trial court's determination of historical facts when that determination is based on a videotape recording admitted into evidence at a suppression hearing." *Id.* at 109; *see also State v. Gobert*, 275 S.W.3d 888, 891-892 & n.13 (Tex. Crim. App. 2009) ("[T]he trial judge viewed the DVD with the State's transcript in hand, and he found that the appellee did in fact actually declare, 'I don't want to give up any right though, if I don't got no lawyer.'  The record supports that conclusion, even as it might also support a different conclusion.  Therefore, we will not second-guess the trial court's determination of the facts . . . .  Under these circumstances, it is appropriate that we defer to the trial court's primary fact-finding function.").

Second, in addition to the videotape, the trial judge saw and listened to Trooper Henderson both during the suppression hearing and at trial. The court of appeals's analysis does not reflect consideration of this testimonial evidence and demeanor, which are especially relevant to a deliberateness determination.

The evidence shows that the colloquy between Trooper Henderson and appellant was conversational and that appellant was calm and cooperative. There was no evidence that Trooper Henderson exhibited hostile, aggressive, or threatening behavior toward appellant or that he intended to create a coercive environment.[48] The trooper's pre-*Miranda* questioning lasted approximately ten seconds. Immediately after appellant made incriminating statements, Henderson stopped the interview, said, "You have not been informed of your rights," and read appellant his *Miranda* warnings. After appellant waived his rights, Henderson did not repeat his pre-warning questions. We think these facts do not necessarily exemplify the deliberate "question first, warn later" gamesmanship so obvious in *Seibert*.[49]

Where the totality of these facts fall on the *Elstad-Seibert* continuum, though, is a question on which reasonable minds may disagree. The court of appeals, for example,

---

[48] The fact that appellant was questioned while handcuffed in the backseat of a police vehicle without *Miranda* warnings does not, in and of itself, show a deliberate and calculated method to undermine the safeguards guaranteed in *Miranda*. *See Tengbergen*, 9 So.3d at 735. Moreover, the fact that a suspect was in custody for purposes of *Miranda* does not, alone, require a finding of coercion. *See, e.g., Nunez-Sanchez*, 478 F.3d at 668-69; *Torres-Lona*, 491 F.3d at 758; *Gaw*, 285 S.W.3d at 325.

[49] *Seibert*, 542 U.S. at 616.

concluded that this case was "a far cry from *Elstad* where the initial conversation took place in the suspect's living room with his mother nearby. Rather, this case is more like *Seibert* where the defendant was under arrest and in custody but had not received any *Miranda* warnings."[50] Indeed, the objective record could certainly support that conclusion.[51] However, the applicable standard does not permit a reviewing court to reverse a trial court's finding of fact simply because it would have decided the question differently.[52]

Based on our review of the record, we cannot say that the trial judge's findings–that Trooper Henderson's failure to initially warn appellant was "simply an oversight" and that he did not deliberately employ a two-step questioning technique–were "implausible on [their] face" or unsupported by the record.[53] Applying the appropriately deferential standard of review, we conclude that the record supports the trial judge's finding that Trooper Henderson's pre-*Miranda* questioning was not a "deliberate attempt to avoid the requirements of *Miranda*."

---

[50] *Carter*, __ S.W.__, 2009 Tex. App. LEXIS 2437, at *36-37 (internal citation omitted).

[51] The court of appeals's analysis closely tracked the objective "effects" approach taken by the *Seibert* plurality. *See Seibert*, 542 U.S. at 615-17.

[52] *Anderson*, 470 U.S. at 573.

[53] *See id.* at 575. Of course, had the trial judge concluded that Trooper Henderson did deliberately employ a two-step questioning technique, we might well uphold that determination because that conclusion is also supported by the objective record. In this case, however, the court of appeals thought it appropriate to remand the case to obtain written factual findings by the trial judge concerning Trooper Henderson's credibility and intent. Having done so, it could not then ignore those specific factual findings and rely solely upon its own assessment of the objective circumstances if applying Justice Kennedy's subjective "intent" approach.

## B. *Elstad* voluntariness inquiry

Once a determination has been made that the pre-warning questioning was not part of a deliberate plan to undermine a suspect's *Miranda* protections, it is still necessary to determine if appellant's post-warning statements were voluntarily made.[54] Thus, the factfinder must examine all of the circumstances and the course of police conduct in evaluating the voluntariness of those post-*Miranda* statements.[55]

This Court has previously held that the trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses," particularly when a motion to suppress is based on the voluntariness of a confession.[56] We must give great deference "to the trial judge's decision to admit or exclude such evidence, which will be overturned on appeal only where a flagrant abuse of discretion is shown."[57]

In this case, the trial judge made specific findings that appellant's post-*Miranda* statements to Trooper Henderson were knowingly and voluntarily made. We find that the

---

[54] *United States v. Stewart*, 536 F.3d 714, 723 (7th Cir. 2008) (when the interrogation process used was not a deliberate end run around *Miranda*, a trial court should determine "whether the initial unwarned confession would flunk the voluntariness standard of *Elstad* such that the taint would carry over to the second warned confession") (internal quotation marks omitted); *see Elstad*, 470 U.S. at 310.

[55] *Elstad*, 470 U.S. at 318.

[56] *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007); *see also Green v. State*, 934 S.W.2d 92, 98-99 (Tex. Crim. App. 1996) (stating that, in the context of determining the voluntariness of a confession, the trial court is the sole factfinder and may elect to "believe or disbelieve any or all" of the evidence presented at a hearing on a motion to suppress).

[57] *Delao*, 235 S.W.3d at 238.

record and reasonable inferences from that record support this finding.  In cases like this, "'[a] subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement.'"[58] Trooper Henderson administered appropriate *Miranda* warnings prior to further questioning, and thus we agree with the trial judge that appellant's post-warning statements were admissible under the *Elstad* standard.

## IV.  Conclusion

We find that the trial judge did not err in denying appellant's motion to suppress. Therefore, we reverse the judgment of the court of appeals and remand this case to that court to address appellant's remaining issue.

Delivered: March 24, 2010

Publish

---

[58] *United States v. Nunez-Sanchez*, 478 F.3d 663, 669 (5th Cir. 2007) (quoting *Elstad*, 470 U.S. at 314).