# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2613

_____

United States of America

*Plaintiff - Appellee*

v.

David Brian Allen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: March 15, 2013
Filed: April 22, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

MURPHY, Circuit Judge.

During an arrest of three individuals for attempting to pass counterfeit checks in Bryant, Arkansas, officers found a receipt for a room at the Comfort Inn Hotel in Little Rock. After Little Rock police officer Rusty Rothwell received this information, he went with his partner Fred Lee to the Comfort Inn to investigate and conduct surveillance. They discovered that David Allen had rented two rooms in the hotel, including the one for which the receipt had been recovered in Bryant. Allen

was later observed disposing of counterfeit checks in the hotel parking lot. He subsequently was arrested, and his car and luggage cart were searched. Thereafter Allen was indicted for conspiracy to make, utter, and possess counterfeit securities in violation of 18 U.S.C. §§ 371 and 513. His motion to suppress was denied by the district court,[1] and Allen then entered a conditional guilty plea, reserving the right to appeal the denial of his suppression motion. He now appeals, alleging Fourth Amendment violations. We affirm.

I.

After Rothwell and Lee went to the Comfort Inn, they spoke to the desk clerk who informed them that the room listed on the receipt recovered in Bryant had been rented to a man who had identified himself as "Darryl Brown." Rothwell and Lee returned to their vehicle in the hotel parking lot and "sat there, just kind of talking it over" because they did not think they had "enough probable cause . . . to make contact." While the two officers were talking, they saw an unknown man leave the hotel with a white plastic bag, walk behind the building, and return to view within seconds without the bag. The officers sat in their car for a few more minutes and then "decided to go in and make contact with the clerk once more and let him know that [they] were going to leave." At the hotel desk the clerk told them that the man they had seen abandon the plastic bag was Darryl Brown. Officer Lee then went outside to locate the small white bag he had seen Darryl Brown discard and found it contained torn up checks.

Rothwell and Lee then went back to the station where they confirmed that the checks recovered from the plastic bag matched those found during the arrest of the

---

[1]The Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, adopting the report and recommendation of the Honorable Jerome T. Kearney, United States Magistrate Judge for the Eastern District of Arkansas.

-2-

suspected coconspirators in Bryant, Arkansas. Rothwell later explained that "the names and the businesses [from the torn up check fragments] were matching up with the ones they had confiscated down in Bryant." While Lee was preparing an application for a search warrant, the desk clerk called to inform the officers that Darryl Brown had indicated he was planning to check out of the hotel.

Rothwell and Lee returned to the hotel where uniformed officers met them. In the parking lot they saw a man beside a black Lexus who was loading items from a luggage cart into the car. Two black duffel bags and a combination printer, scanner, and copier machine were visible on the luggage cart, and officers discovered approximately $500 and a Mississippi identification card with the name "Darryl Brown" on the suspect. When asked his name, the suspect replied that he was David Allen. Officers also identified a woman named Tangela Dean in the driver seat of the vehicle. Allen was arrested and secured in the squad car, and Dean was also taken into custody after outstanding warrants for her arrest were discovered. Officers searched the Lexus and found thousands of dollars in cash inside it. They also searched the items on the luggage cart and found a laptop computer, check stock, and blank checks in the black duffel bags.

Allen was indicted for conspiracy to make, utter, and possess counterfeit securities in violation of 18 U.S.C. §§ 371 and 513(a). He moved to suppress the evidence discovered during the search of his car and the luggage cart. The matter was referred to a magistrate judge who held a hearing on the motion to suppress. Officer Rothwell testified that a combination printer, scanner, and copier machine is often associated with counterfeit check cases. Rothwell also explained that the items on the luggage cart next to Allen's vehicle would have inevitably been inventoried because officers would not have "left all the property there in the parking lot."

The magistrate judge recommended denial of Allen's motion to suppress, concluding that the officers had probable cause to arrest Allen and that the searches

of the car and the items on the luggage cart were legal because they had occurred incident to Allen's arrest. The magistrate judge alternatively reasoned that all of the items would have been inevitably discovered when the vehicle and the luggage cart were inventoried by police. The district court adopted the magistrate judge's findings and conclusions. Allen then entered a conditional guilty plea, reserving the right to appeal the denial of his motion to suppress.

II.

Allen argues that the officers lacked probable cause for his arrest and that the search of the property in his car and on the luggage cart violated the Fourth Amendment. On appeal from the denial of a motion to suppress, we review findings of fact for clear error and legal conclusions de novo. United States v. Olivera-Mendez, 484 F.3d 505, 509 (8th Cir. 2007).

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." A warrantless arrest by an officer is reasonable under the Fourth Amendment "where there is probable cause to believe that a criminal offense has been or is being committed." United States v. Jones, 535 F.3d 886, 890 (8th Cir. 2008). Probable cause to make a warrantless arrest exists if "the facts and circumstances are sufficient to lead a reasonable person to believe that the defendant had committed or is committing an offense." United States v. Torres-Lona, 491 F.3d 750, 755 (8th Cir. 2007). A "probability or substantial chance of criminal activity, rather than an actual showing of criminal activity" is sufficient. Id. at 756 (citation omitted). To determine whether an officer "had probable cause to arrest an individual, we examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal quotation marks omitted).

With these principles in mind, we conclude that probable cause existed to arrest Allen for possession of counterfeit checks. Evidence the Little Rock police obtained in connection with the arrest of the three individuals in Bryant, Arkansas for attempting to pass counterfeit checks had alerted the police to the possibility that other conspirators were staying in a specific room at the Comfort Inn Hotel in Little Rock. Officers Rothwell and Lee subsequently obtained physical evidence in the form up torn up checks found in the bag that Allen had abandoned outside the hotel. Officer Lee confirmed that "the names and the businesses [on the torn up check fragments] were matching up with the ones that they had confiscated down in Bryant." The Little Rock officers also saw Allen had a combination printer, scanner, and copier machine on his luggage cart, and there was evidence that such a machine is typically associated with counterfeit check cases. These facts and circumstances provided the officers with a "probability or substantial chance" that Allen was involved in a conspiracy to possess counterfeit securities, Torres-Lona, 491 F.3d at 756 (citation omitted), and probable cause thus existed for his arrest, Jones, 535 F.3d at 890.

We turn next to Allen's challenge of the search of his car incident to his arrest. Searches conducted without prior judicial approval "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Arizona v. Gant, 556 U.S. 332, 338 (2009) (citation omitted). A search of items incident to an arrest lawfully extends to "the arrestee's person and the area within his immediate control," which means "the area from within which an arrestee might reach in order to grab a weapon or evidentiary items." Chimel v. California, 395 U.S. 752, 763 (1969). The Supreme Court has explained that officers can constitutionally search items in a vehicle incident to an arrest "(1) if the arrestee is within reaching distance of the vehicle during the search, or (2) if the police have reason to believe that the vehicle contains evidence relevant to the crime of arrest." Davis v. United States, 131 S. Ct. 2419, 2425 (2011) (internal quotation marks omitted) (citing Gant, 556 U.S. at 344). Even after an arrestee has been secured in the back of a police car, officers may search the vehicle incident to an arrest if their

observations provide a "reasonable basis" to conclude that evidence of the crime of arrest "might be found in the vehicle." See United States v. Tinsley, 365 F. App'x 709, 711 (8th Cir. 2010) (per curiam).

We conclude that the officers in this case lawfully searched Allen's car incident to his arrest because they had reason to believe that the vehicle contained evidence relevant to the crime of conspiracy to possess counterfeit securities. Gant, 556 U.S. at 344. Little Rock officers reasonably believed that Allen had been involved in check forgery because earlier in the evening they had seen him throw away a plastic bag that was found to contain torn up checks. It was also reasonable for officers to conclude that Allen had items used to forge checks in his car because he was checking out of the hotel with all of his luggage. Officers in fact observed a combination printer, scanner, and copier machine on Allen's luggage cart which gave them adequate reason to believe that other materials used to forge checks might be found in the vehicle. Cf. United States v. Hambrick, 630 F.3d 742, 747 (8th Cir. 2011). Based on these facts it was reasonable for officers to believe that the car contained evidence of check counterfeiting, and officers could thus lawfully search his vehicle incident to his arrest. Gant, 556 U.S. at 344.

Allen also argues that the district court erred in denying his motion to suppress the evidence discovered on the luggage cart. Even if officers could not search the items on the luggage cart incident to Allen's arrest since he had already been secured in the patrol car, see United States v. Perdoma, 621 F.3d 745, 752 (8th Cir. 2010), the evidence found on the luggage cart may still be admissible if the government can show it would have been inevitably discovered. See United States v. James, 353 F.3d 606, 616–17 (8th Cir. 2003). If the government "can establish by a preponderance of the evidence that the information ultimately or inevitably would have been discovered by lawful means . . . [then] the evidence should be received." Nix v. Williams, 467 U.S. 431, 444 (1984). For that exception to apply the government must show (1) a reasonable probability that the evidence would have been discovered by lawful means

in the absence of police misconduct, and (2) an active pursuit of a substantial, alternative line of investigation at the time of the constitutional violation. United States v. Conner, 127 F.3d 663, 667 (8th Cir. 1997).

In this case there is a reasonable probability that the evidence on the luggage cart would have been discovered after Allen's arrest during an inventory search and that the police were pursing an alternative line of investigation. Inventory searches may be conducted without a warrant or probable cause to search, United States v. Taylor, 636 F.3d 461, 464 (8th Cir. 2011), so long as they are reasonable under the totality of the circumstances, United States v. Hall, 497 F.3d 846, 851 (8th Cir. 2007). An inventory search protects an owner's property while in police custody as well as protecting the police from danger and from subsequent claims about stolen property. South Dakota v. Opperman, 428 U.S. 364, 369 (1976). Officers have broad authority to conduct inventory searches of items "found on the person or in the possession of an arrested person who is to be jailed." Illinois v. Lafayette, 462 U.S. 640, 646 (1983). Examining "all the items removed from the arrestee's person or possession and listing or inventorying them is an entirely reasonable administrative procedure." Id.

At the suppression hearing the government entered into evidence a police department policy governing inventory searches. When asked whether there was "any way [the police] would have just left the items as they were out on the street," an officer answered that they would not "have just taken the two subjects from the vehicle and left all the property in the parking lot." The officer explained that since both Allen and Dean were arrested at the scene, the items on the luggage cart would have been taken to the police station for safekeeping and inventoried to guard against loss or theft. Lafayette, 462 U.S. at 644–46. There was also evidence the officers were in active pursuit of a substantial, alternative line of investigation because Lee had been preparing an application for a search warrant. See Conner, 127 F.3d at 668. The only event that stopped Lee from completing his application was a call from the

desk clerk informing the officers that Allen was planning to check out of the hotel. See United States v. Hammons, 152 F.3d 1025, 1030 (8th Cir. 1998). Since the evidence showed that all the items on the luggage cart would have inevitably been discovered and that the officers were pursuing an alternative line of investigation, Nix, 467 U.S. at 433, the district court did not err in denying Allen's motion to suppress.

## III.

For these reasons we affirm the judgment of the district court.

_____