**Affirmed and Memorandum Opinion filed April 10, 2012.**



In The

# Fourteenth Court of Appeals

_____

## NO. 14-10-00967-CR
_____

**ISRAEL TONATI ZUNIGA-DUARTE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 176th District Court
Harris County, Texas
Trial Court Cause No. 1188009**

## MEMORANDUM OPINION

Appellant, Israel Tonati Zuniga-Duarte, was convicted of murder. Punishment was assessed at thirty years' imprisonment. In two issues, he argues that the trial court erred by overruling his motion to suppress and by failing to include an instruction on voluntariness in the jury charge. We affirm.

# BACKGROUND

In October 2008, officers from the Houston Police Department responded to a call about a shooting at an apartment complex. Officers Rippey and Nguyen arrived at the scene first, where they found Rene Cortez lying face-up in the middle of the living room floor, dead from an apparent gunshot wound to the chest.

Appellant, Rene's roommate, was outside of the apartment with a group of people when the officers arrived. The initial responding officers did not speak Spanish and were unable to communicate with the potential witnesses. Officer Rivera was called to the scene by dispatch because of his ability to speak Spanish. Appellant needed to be interviewed because "nobody knew what was going on." Officer Rivera then translated appellant's statement for Officer Rippey. Appellant told Officers Rivera and Rippey that Rene had been out at a nearby club. On his way home he was shot. Rene managed to make it to the apartment and pound on the door. When appellant answered, Rene fell into his arms and died.

Officer Rivera testified that while they were talking to appellant, he was not in handcuffs, was not in a patrol car, and was able to walk around unrestrained. After Officer Rivera translated appellant's statement for Officer Rippey, they asked appellant "to have a seat in the patrol car until homicide investigators made the scene to speak to him." They decided to place appellant in the patrol car because it was a secure place, and so they would "know where he's at, and somebody was there with him." Officer Rivera stated that it was customary to place witnesses in the back of a patrol car. He testified that it is also customary to transport witnesses to the station for an interview in a patrol car. On cross-examination, Officer Rivera said that although appellant seemed scared he did not seem to be lying about what happened. According to Officer Rivera, appellant was not placed under arrest at that time and was considered only a witness.

2

Some hours later, appellant was transported by police vehicle to the police station. At the station, Officer Fred Mares took another statement from appellant. Officer Mares stated that he was asked to obtain appellant's statement because of his ability to speak Spanish. Officer Mares classified his ability to speak Spanish as "very very basic." As a result his ability to communicate with appellant was limited. When he met appellant, appellant was in an "interview room" that Officer Mares described as a seven-by-ten windowless room, with a single door, a table and a couple of chairs. Officer Mares stated that appellant was not handcuffed, had some food on the table, and did not appear nervous. He introduced himself and obtained a statement from appellant. This statement was recorded, transcribed into English, and did not contain any *Miranda* warnings. Officer Mares testified that appellant neither asked to stop talking with him nor asked to speak with an attorney. He also stated that it was customary to bring a witness into the station to make a statement. According to Officer Mares, appellant was not under arrest at that time and was still considered only a witness.

In this statement, appellant said that he and Rene had worked earlier in the day and had returned home to play videogames and drink beer. In the evening, appellant went to his cousin's house, and Rene went out. At approximately 4:00 a.m., appellant heard Rene knocking on the door. When appellant opened the door, Rene said "[h]ey dude, they got me" and then "hugged" appellant. Appellant thought that Rene was playing a practical joke because he didn't see any blood on him. Then Rene's body went "very, very, very loose." Appellant laid Rene on the floor in the living room and ran upstairs to a friend's apartment. Appellant told the friend what happened, and the friend called the police. Once appellant gave his statement, Officer Mares talked to Sergeant J.C. Padilla about taking yet another statement from appellant. Officer Mares explained that he could not address "certain questions" because of his limited command of the Spanish language.

3

While appellant was at the station giving his statement to Officer Mares, the police investigation continued at the scene. In the bedroom of the apartment, police found a spent, nine-millimeter bullet in the carpet. Prior to taking appellant's statement, Sergeant Padilla had received a photograph of this bullet. He brought this photograph into the interview room with him. He stated that he became involved in the case because of his ability to speak Spanish. Prior to speaking with appellant, Sergeant Padilla listened to the statement Officer Mares recorded. He then went into the interview room and introduced himself. Sergeant Padilla indicated that appellant was not handcuffed, was in regular clothing, and had a bag from McDonald's and a drink on the table. Sergeant Padilla did not read appellant his *Miranda* warnings, did not consider him to be under arrest, and did not consider him to be in custody. Appellant was free to leave if he wanted to terminate the interview and never asked for an attorney. Before taking his statement, Sergeant Padilla asked appellant if he needed to use the restroom. Appellant indicated that he did, and Sergeant Padilla escorted him to and from the restroom.

Upon returning from the restroom, the follow-up questioning began. The initial statement given to Sergeant Padilla was not recorded because appellant was still considered only a witness. Sergeant Padilla stated that it is not customary to record witness statements. In this statement, appellant and Rene were in the bedroom playing videogames when they heard a knock at the door. Rene got up and answered the door while appellant stayed in the bedroom. Appellant heard what sounded like a gunshot and got up to find Rene in the living room. Sergeant Padilla testified that "when [he] began talking to [appellant], … [appellant] gave [him] a different story than [appellant] had given Officer Mares." Because he recognized the inconsistencies between appellant's statements, he decided to confront appellant with the photographs obtained from the scene. Appellant began crying and told Sergeant Padilla that he would tell him what really happened. At this point, Sergeant Padilla excused himself to confer with the other officers assigned to the case.

4

After conferring with the other officers, Sergeant Padilla testified that "it was decided that a second taped statement … would be taken." Although Sergeant Padilla still believed that appellant was only a "witness at this point," out of an "abundance of caution" he decided to read appellant *Miranda* warnings, which appellant waived. Sergeant Padilla testified that during the recorded statement, appellant neither invoked his right to remain silent nor requested an attorney.

In this second recorded statement, appellant said that he and Rene had come home after work, had a few beers, and played videogames. Sometime in the early morning hours, Rene got out a bag of a white powdery substance and "put it through his nose." Around 4:00 a.m., Rene got up, walked over to appellant, put a gun to his head, and demanded that he "suck his cock." Appellant refused, and a struggle ensued. Appellant wrestled the gun away from Rene and threw it on the ground, causing the gun to discharge. Appellant then called a friend who lived nearby for help. Appellant stated that this friend disposed of the gun.

## A. Motion to Suppress

Subsequently, appellant was arrested and charged with the murder of Rene Cortez. Prior to trial, appellant moved to suppress all statements made to the officers. In his motion, appellant further alleged that he made the statements while under arrest or substantially deprived of his freedom. Finally, appellant argued that the statements made were the product of an illegal arrest and search and seizure.

The State called Officers Rivera, Mares, and Sergeant Padilla to testify at the suppression hearing. They testified to the above stated facts. After the State rested, appellant testified only for the purposes of the suppression motion. He stated that although he was not handcuffed when he was initially placed in the back of the patrol vehicle, he was handcuffed prior to being transported to the station. Appellant did not feel

that he was free to leave at any time once he was placed in the patrol vehicle and felt he was in custody "at all times." Appellant further stated that if he had appreciated his ability to leave at anytime or to talk to a lawyer, he would have done so and would not have talked to any of the officers. Finally, appellant testified that he did not understand all of the rights read to him by Sergeant Padilla during the last interview.

On cross-examination, appellant admitted that he lied to Officers Rivera and Mares during his statements. Additionally, the State questioned appellant about any possible threatening behavior or coercion on the part of the officers:

> [[O]ut of any of those officers, none of them told you, you have to talk to us, you have to give us a statement or you're in trouble, right?
>
> [Appellant:] They did not say that, but they did say that I had to give a statement.
>
> ….
>
> [State:] And I want to make sure I'm clear. No one said, Mr. Duarte, if you don't talk to us you're going to go to jail, we're going to take your family away, anything remotely near that? Did anybody say anything like that to you?
>
> [Appellant:] No, but they did tell me that I needed to give a statement, that that was my right.
>
> [State:] Okay. So -- just so the judge knows, the only thing you thought was coercive in this case was things some of these officers said, you have to give a statement, fair enough?
>
> [Appellant:] Yes.

Appellant confirmed that Sergeant Padilla read appellant *Miranda* warnings, and that he waived and understood all but two of those rights. In response to whether he understood that he had the right to an attorney, appellant stated "[n]ot of everything, but I did answer yes." Appellant also testified that Sergeant Padilla never told him he had the right to terminate the interview at any time.

6

After listening to further arguments from both the State and appellant, the trial court made the following oral findings, transcribed into the record. First, appellant was not in custody for the purposes of the statements made to Officers Rivera or Mares. Second, appellant voluntarily went to the station to make a witness statement. Third, the officers were credible when they testified that appellant was not in custody and that he was free to leave. Fourth, appellant was "in custody when he mentioned the gun." Finally, the warned statement was voluntarily given. The trial court denied the motion to suppress.

## B. Trial

The trial testimony of Officers Rivera and Mares was essentially the same as their suppression hearing testimony: appellant was not placed in handcuffs and was being treated as a witness at the time of their interaction. Officer Rivera testified about appellant's statement without objection. The trial court admitted appellant's statement to Officer Mares over objection.

Sergeant Padilla testified at trial to the same essential facts as he did at the suppression hearing, with a few additions. Sergeant Padilla stated that interviewing both suspects and witnesses in an interview room was common practice. After introducing himself, Sergeant Padilla asked if appellant wanted to speak with him; appellant agreed. Sergeant Padilla testified that he escorted appellant to the restroom because "[i]t's policy of the Homicide Division that anyone that is not assigned there that they are escorted anywhere on that floor." Sergeant Padilla indicated this policy was in place to protect "sensitive information." Sergeant Padilla testified that appellant never expressed a desire to leave during their interactions. He stated that he did not record the first statement given by appellant because he was "just there to do a supplemental interview …." The trial court admitted the first statement given to Sergeant Padilla over objection. When the State sought to admit the recorded statement taken by Sergeant Padilla, appellant stated

7

that he had the "[s]ame objection as before that I -- re-urge the motion that we had before as to involuntariness." The trial court noted that the "objection is still overruled," and admitted the statement.

## ANALYSIS

Appellant presents two issues on appeal: the trial court erred in overruling his motion to suppress the statements made to police officers; and the trial court erred in failing to include an instruction regarding voluntariness of his statements in the jury charge.

### A. Motion to Suppress

Appellant argues that the trial court erred in denying his motion to suppress the statements he made to Officer Mares and Sergeant Padilla.[1] He contends that because the statements were made while he was in custody, he should have been given *Miranda* warnings, as well as the statutory warnings contained in article 38.22 of the Texas Code of Criminal Procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.22 (West 2005); *Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966). He asserts that because he did not receive these warnings until his last recorded statement, all of his statements were inadmissible evidence and should have been suppressed. *See* Tex. Code Crim. Proc. Ann. art 38.22; *Miranda*, 384 U.S. at 444–45; *see also Missouri v. Seibert*, 542 U.S. 600, 609–11 (2004) (plurality op.) (discussing admissibility of statements made when "mid-stream" *Miranda* warnings are given).

---

[1] Appellant argued in the original suppression motion that all statements he made, whether recorded or unrecorded, should be suppressed. On appeal, he does not argue that the statement given at the scene to Officer Rivera should have been suppressed.

In reviewing a trial court's ruling on a motion to suppress, appellate courts must view all of the evidence in the light most favorable to the ruling. *State v. Garcia-Cantu*, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). At a suppression hearing, the trial judge is the sole fact-finder. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts when supported by the record, particularly if the findings turn on witness credibility and demeanor. *See State v. Ross*, 32 S.W.3d 853, 855–56 (Tex. Crim. App. 2000) (en banc). The same deference is accorded to determinations of mixed questions of law and fact if their resolution depends upon witness credibility and demeanor. *Id.* at 856. Issues that present purely legal questions are considered under a *de novo* standard. *Id.* We will sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996) (en banc).

*Miranda* warnings are given to "safeguard an uncounseled individual's constitutional privilege against self-incrimination during custodial interrogation." *Herrera v. State*, 241 S.W.3d 520, 525 (Tex. Crim. App. 2007). Additionally, article 38.22 of the Texas Code of Criminal Procedure governs the admissibility of statements made by an accused during custodial interrogation. Tex. Code Crim. Proc. Ann. art. 38.22; *see also Herrera*, 241 S.W.3d at 526. As with *Miranda* warnings, article 38.22 warnings are required only when the interrogation is custodial. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 3(a), 5; *Herrera*, 241 S.W.3d at 526.

"A person is in 'custody' only if, under the circumstances, a reasonable person would believe that his freedom of movement was restrained to the degree associated with a formal arrest." *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996) (citing *Stansbury v. California*, 511 U.S. 318, 322, 325 (1994)). The "reasonable person" standard presupposes an innocent interrogee. *Id.*

9

Our "custody" inquiry includes an examination of all objective circumstances surrounding the questioning. *Herrera*, 241 S.W.3d at 525. The subjective belief of law enforcement officials about whether a person is a suspect does not factor into our "custody" determination unless an official's subjective belief was somehow conveyed to the person questioned. *Id*. at 525–26. Stationhouse questioning does not, in and of itself, constitute custody. *Dowthitt*, 931 S.W.2d at 255. A person is not in custody if he "voluntarily accompanies police officers, who are then only in the process of investigating a crime, to a certain location, and he knows or should know that the police officers suspect he may have committed or may be implicated in committing the crime." *Turner v. State*, 252 S.W.3d 571, 579 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). "Once the circumstances show the person is acting upon the invitation, urging or request of police officers, and not the result of force, coercion or threat, the act is voluntary and the person is not then in custody." *Id* at 580. However, the mere fact that an interrogation begins as noncustodial does not prevent custody from arising later; police conduct during the encounter may cause a consensual inquiry to escalate to custodial interrogation. *Dowthitt*, 931 S.W.2d at 255.

Four general situations may constitute custody for purposes of *Miranda* and article 38.22: (1) the suspect is physically deprived of his freedom of action in any significant way; (2) a law enforcement officer tells the suspect he is not free to leave; (3) law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) there is probable cause to arrest the suspect, and law enforcement officers do not tell the suspect he is free to leave. *Gardner v. State*, 306 S.W.3d 274, 294 (Tex. Crim. App. 2009); *Dowthitt*, 931 S.W.2d at 254. The fourth category applies only when the officer's knowledge of probable cause is communicated to the suspect or by the suspect to the officer; even then, custody is established only "if the manifestation of probable cause, combined with other

circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest." *Gardner*, 306 S.W.3d at 295 n.48.

### 1. Statement to Officer Mares and First Unrecorded Statement to Sergeant Padilla

Appellant argues that his "detention in the back of a patrol car …, transport by police to homicide, persistent and continued questioning by homicide officers in a small rectangular windowless room with a single door, with access to a bathroom only while escorted by an armed police officer, would cause a reasonable person in his situation to believe that his freedom of movement was restricted in a way consistent with formal arrest." Thus, he argues, his statements were made while he was in custody and were the product of custodial interrogation.

The trial court found that appellant "voluntarily accompanied [the] officers to the station to make a witness statement," and that the "officers were credible when they testified that [appellant] was not in custody at that time and was free to leave." We give deference to the trial court's fact finding that the officers' testimony was credible and that appellant voluntarily went to the station to make a statement. *Herrera, 241 S.W.3d* at 526–27; *Ross*, 32 S.W.3d at 855. Considering the trial testimony on this issue, and giving deference to the trial court's findings at the suppression hearing, the objective facts indicate that appellant was not in custody prior to or during the statement made to Officer Mares or the first unrecorded statement made to Sergeant Padilla. *See Gardner*, 306 S.W.3d at 294; *Dowthitt*, 931 S.W.2d at 254.

Prior to and during these statements, none of the four general custody situations occurred. Appellant was not physically deprived of his freedom of action in any significant way. He was not handcuffed and went to the station voluntarily. Prior to the unrecorded statement to Sergeant Padilla, appellant was escorted to and from the restroom. This fact indicates a restriction of appellant's freedom of movement, but alone

11

is not necessarily enough to show custody. *See Dowthitt*, 931 S.W.2d at 256 ("The fact that appellant was accompanied during restroom breaks, although given an innocuous explanation, is also to be considered."). While he was escorted to the restroom, there was no evidence that officers told appellant he could not leave. Even assuming that the officers never told appellant he was free to leave at any time, they all testified that they would have allowed appellant to leave at any time if appellant had asked. The trial court specifically found the officers credible in that regard. A reasonable person would not believe that his freedom of movement was significantly restricted in this situation, where he: voluntarily accompanied officers to the station; was given food; was neither handcuffed nor told he was under arrest; did not ask to leave; and was not threatened or coerced.

The evidence elicited did not indicate that appellant's freedom of movement was deprived in a significant way, or that the officers created a situation in which a reasonable person would believe that his freedom of movement was significantly restricted. Thus, the statement made to Officer Mares and the first unrecorded statement to Sergeant Padilla was not the product of custodial interrogation and, therefore, not subject to *Miranda* or article 38.22. *See Gardner*, 306 S.W.3d at 294; *Dowthitt*, 931 S.W.2d at 254. The trial court did not err in denying appellant's suppression motion with regard to these statements. *Herrera*, 241 S.W.3d at 526.

## 2.  Recorded Statement to Sergeant Padilla

The fourth general custody situation occurred when Sergeant Padilla confronted appellant with the photographs from the crime scene. At that point, appellant told Sergeant Padilla that he "lied about what really happened," and Sergeant Padilla terminated the interview. This termination of the interview by Padilla amounted to a communication of probable cause that would lead a reasonable person to believe that he was under restraint to the degree associated with an arrest. *See Gardner*, 306 S.W.3d at

295 n.48. However, prior to taking the recorded statement, Sergeant Padilla read appellant *Miranda* and article 38.22 warnings, which appellant waived.

Appellant contends that the final recorded statement given to Sergeant Padilla must be suppressed because, although he received *Miranda* warnings before the statement was made, the statement was made as a result of a prohibited "question-first" interrogation technique. *See Seibert*, 542 U.S. at 622 (Kennedy, J., concurring); *Carter v. State*, 309 S.W.3d 31, 35–36 (Tex. Crim. App. 2010). A "question-first" interrogation technique consists of officers interrogating a suspect without providing *Miranda* warnings and obtaining a confession; then, after the inculpatory statements are made, officers provide *Miranda* warnings and obtain a waiver of the warnings. *See Seibert.* 542 U.S. at 604–05. Officers then have the suspect repeat the inculpatory statements to cure the lack of *Miranda* warnings. *See id* at 605.

In a plurality opinion, the Supreme Court held that under these circumstances, this type of interrogation technique circumvented the objective of *Miranda* by rendering any warnings given ineffective. *Id.* at 611–12; *Martinez v. State*, 272 S.W.3d 615, 619–20 (Tex. Crim. App. 2008). The Supreme Court found that the purpose of this interrogation technique was to obtain a confession the suspect may not have made if he had understood his rights at the outset. *Seibert*, 542 U.S. at 611. In *Carter*, the Court of Criminal Appeals expressly adopted Justice Kennedy's concurrence in *Seibert*. *Carter*, 309 S.W.3d at 37. Justice Kennedy's concurrence determined that where a "question-first" interrogation technique is used in a deliberate, calculated way to undermine *Miranda* warnings, absent "curative measures," the post-warning statements must be excluded. *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring). However, to undermine *Miranda* in a calculated manner by conducting a "question-first" interrogation technique, *Miranda* must first apply to the earlier unwarned statements. *See Ervin v. State*, 333 S.W.3d 187, 213 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (holding that because the appellant

13

was not in custody for the purpose of the first two statements, the third statement was not the product of a "question-first" interrogation technique employed deliberately to circumvent *Miranda*, and was admissible based on the defendant's waiver of her *Miranda* rights); *cf. Seibert*, 542 U.S. at 604–05 (defendant in custody when unwarned, inculpatory statement was made); *Carter*, 309 S.W.3d at 33 (same); *Martinez*, 272 S.W.3d at 618 (same).

In this case, we have already determined that *Miranda* did not apply to the earlier unwarned statements because appellant was not in custody when he made them. *See* Tex. Code Crim. Proc. Ann. art. 38.22, §§ 3(a), 5; *Herrera*, 241 S.W.3d at 526. Custody did not arise until Sergeant Padilla confronted appellant with the photograph and appellant said he would tell Sergeant Padilla what really happened. At that moment, the noncustodial questioning escalated to custodial interrogation. *See Dowthitt*, 931 S.W.2d at 255. To be admissible, any statement appellant made from that point was subject to *Miranda*. *See* Tex. Code Crim. Proc. Ann. art. 38.22; *Herrera*, 241 S.W.3d at 526. Before appellant's next statement, he was given *Miranda* warnings, which he waived.

Because *Miranda* warnings were not required prior to the other noncustodial statements, a "question-first" interview tactic could not have been employed deliberately to circumvent the protections of *Miranda*. *See Seibert*, 542 U.S. at 622 (Kennedy, J., concurring); *Carter*, 309 S.W.3d at 37. The trial court did not err in denying appellant's suppression motion with regard to this statement. *See Carter*, 309 S.W.3d at 37. Having concluded that the trial court did not err in denying appellant's suppression motion, we overrule appellant's first issue.

## B. Jury Charge

In his second issue, appellant contends he was egregiously harmed by the trial court's failure to include an article 38.22, section 6 instruction within the jury charge

14

about the voluntariness of the statements that he made.[2] A trial judge has the absolute duty to prepare a jury charge that accurately sets out the law applicable to the case. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007); *Oursbourn v. State*, 259 S.W.3d 159, 179 (Tex. Crim. App. 2008). When a statue requires an instruction under certain circumstances, that instruction is the "law applicable to the case." *Oursbourn*, 259 S.W.3d at 180. The trial court must give the instruction for the law applicable to the case regardless of whether it has been specifically requested. *Id*. at 179–80.

Article 38.22, section 6 is the "law applicable" to any case in which a question is raised and litigated as to the "general" voluntariness of a statement of an accused. *Id*. at 180. This is a statutorily mandated instruction and the trial court must include it in the jury instruction when the voluntariness of a defendant's statement is at issue. *Id*. A question of voluntariness is raised when a party notifies the trial judge or the trial judge raises the issue on her own. *Id.* at 175. Under article 38.22, section 6, if a question is raised, the trial judge is then required to (1) make an independent determination outside of the jury's presence that the statement was made under "voluntary" conditions, and (2) instruct the jurors that they shall not consider any statement for any purpose unless they believe beyond a reasonable doubt that the statement was made voluntarily. Tex. Code Crim. Proc. Ann. art. 38.22, § 6; *Oursbourn*, 259 S.W.3d at 180–81. The issue of voluntariness should be submitted to the jury under article 38.22, section 6 if, based on the evidence presented at trial, a reasonable jury could find that the statement was not voluntary. *Vasquez v. State*, 225 S.W.3d 541, 545 (Tex. Crim. App. 2007).

Appellant points to his motion to suppress and the hearing on the motion, in which he claims he raised a question of "voluntariness." Appellant generally alleged in his motion to suppress that the statements taken by the officers violated both Articles 38.22 and 38.23 of the Texas Code of Criminal Procedure. However, neither at the suppression

---

[2] Appellant acquiesces to the fact that error was not properly preserved at trial.

15

hearing, nor at the charge conference did appellant cite article 38.22, section 6 or address the language of the statute as the basis for his voluntariness request. *Cf. id.* at 543 (holding although appellant did not cite specific statute as basis for this request, he paraphrased the statutory language provided in article 38.22, section 6, and therefore, section 6 was litigated to the trial court). Appellant did not urge any objection based on article 38.22, section 6 as grounds for a jury instruction.

Appellant does not delineate exactly how his statements were "involuntary," instead he merely states that they were. He further summarily states that this issue was actually litigated to the jury. Notably, appellant did not testify at trial or offer testimony from any witnesses, nor did he offer argument in support of this theory. [3] Presumably, appellant relies on the cross-examination of the officers that took his statements to raise the question of voluntariness. But during cross-examination, appellant never directly asked any of the officers whether they threatened, coerced or in any other way employed "police overreaching" to obtain appellant's statements. [4]

Appellant objected to the admission of the final recorded statement on the grounds of "involuntariness." However, appellant made no further argument, to the court or to the jury, as to how or why the evidence showed the statement was involuntary. This is not actually litigating the question of voluntariness before the jury. *See Oursbourn*, 259 S.W.3d at 175 ("The language 'where a question is raised' [in Article 38.22, § 6]

---

[3] Further, in the suppression hearing, appellant testified that the officers did not threaten or coerce him in any manner. Additionally, in the suppression hearing appellant did not argue that his statements were involuntary. Instead he argued that he was in custody at the time he made each statement and therefore should have been given *Miranda* warnings.

[4] *See Liberato v. State*, 14-09-00755-CR, 2010 WL 3636155, *4 (Tex. App.—Houston [14th Dist.] Sept. 21, 2010, pet. ref'd) (mem. op., not designated for publication) (holding no question of voluntariness raised where on cross-examination, witness slightly hesitated when appellant's counsel asked the question about coercion, and appellant's counsel thought the jury may have picked up on that); *Aldaba v. State*, No. 14-08-00417-CR, 2009 WL 1057685, at *3 (Tex. App.— Houston [14th Dist.] Apr. 16, 2009, pet. ref'd)(mem. op.) (holding nothing in the cross-examination suggested that appellant's statements to the homicide detectives were made involuntarily as contemplated by section 6).

16

contrasts with the language found in Article 38.22, § 7 and Article 38.23 which speaks of the *evidence* raising an issue."); *see also Randall v. State*, 14-06-00468-CR, 2008 WL 5262738 (Tex. App.—Houston [14th Dist.] Dec. 18, 2008, no pet.) (mem. op., not designated for publication) (concluding defendant did not raise a question regarding general voluntariness of his statement under section 6 because defense instead focused on inadmissibility of the statements pursuant to *Miranda* and Article 38.22, section 3, arguing that the statements resulted from custodial interrogation).

Finally, appellant elicited neither evidence nor testimony regarding youth, intoxication, illness or medication, mental incapacitation, or any other possible disabilities that may have prevented him from voluntarily giving a statement. *See Oursbourn*, 259 S.W.3d at 172–73. There was no evidence that appellant's statements were made involuntarily as contemplated by Article 38.22, section 6. *See Aldaba*, 2009 WL 1057685, at *3. Because the issue of voluntariness was never raised before the jury, an Article 38.22 section 6 instruction was not "the law applicable to the case." Therefore, the trial court did not reversibly err by failing to include such an instruction in the charge to the jury. Appellant's second issue is overruled.

## CONCLUSION

Having overruled both of appellant's issues, we affirm the judgment of the trial court.


/s/    Adele Hedges
        Chief Justice


Panel consists of Chief Justice Hedges and Justices Brown and Christopher.
Do Not Publish — Tex. R. App. P. 47.2(b).

17