**Affirmed and Memorandum Opinion filed May 30, 2013.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-01032-CR
### NO. 14-11-01033-CR

### DEON RUSH, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 506th District Court
Grimes County, Texas
Trial Court Cause Nos. 16,022 & 16,024C**

## M E M O R A N D U M   O P I N I O N

After the trial court denied appellant Deon Rush's motion to suppress, he pleaded guilty to two counts of burglary of a habitation. In a single issue, appellant asserts that the trial court erred in denying his motion to suppress because officers secured appellant's agreement to custodial interrogation before advising him of his constitutional rights. We affirm.

## BACKGROUND

Appellant was arrested on October 10, 2006, after a burglary in which appellant shot the homeowner who interrupted the offense. At the time of his arrest, appellant was nineteen years old. He was taken to the Grimes County Sheriff's Department and placed in an interview room. An investigator with Grimes County, Travis Higginbothem, asked appellant his name and asked if appellant wanted anything to drink. Appellant stated he wanted to talk to his mother; Higginbothem told him he could speak to his mother, but again asked what he wanted to drink. Higginbothem left the interview room to get a soda for appellant. Appellant sat alone in the interview room for approximately 40 minutes. During this time, he rested his head on his chest and appeared to be sleeping.

Officer Johnny Martinez of the Grimes County Sheriff's Department came into the room with Higginbothem and Texas Ranger Bryant Wells, who participated in the arrest. Martinez asked appellant to wake up and asked what happened to appellant's head. Appellant responded that he had been "pistol-whipped." Martinez explained that he was going to photograph appellant's injuries for documentation purposes, and swab appellant's hands for gunshot residue. Appellant asked to speak with his mother. Wells assured appellant they had contacted his mother and she was aware that he had been arrested. Martinez asked where appellant's mother was located, and appellant responded she was in Bryan. Martinez asked if appellant's mother had transportation, and appellant stated she did not. Martinez explained that appellant could speak with his mother on the telephone after appellant finished talking with Martinez. Martinez asked, "Is that fine with you?" Appellant nodded his assent.

After Higginbothem completed the photographs, swab of appellant's hands, and a buccal swab for DNA purposes, Martinez sat down in front of appellant and

said, "Deon, if you don't mind, I'd like to sit down and talk to you, okay; I'm going to ask some questions and go over some things with you, okay?" Martinez explained that he wanted to ask appellant questions about what had happened, and asked appellant to tell the truth. Appellant, by nodding his head, agreed to speak with Martinez. Martinez then explained that appellant was in custody, and he would read appellant his rights. Martinez requested that appellant tell him if he did not understand any of his rights. Martinez read appellant his rights, asking after each one whether appellant understood. Appellant answered he understood his rights, and signed a written waiver.

Appellant then admitted breaking into a house with intent to steal. The residents of the house interrupted him, and appellant shot one of the residents. When the police began chasing him, appellant stole one of the vehicles at the house and drove to an apartment complex. He went into another individual's home where he was eventually apprehended. Appellant gave a full confession explaining how he entered the house, was interrupted during the burglary, took the keys to the complainant's vehicle, and fled the first scene. Appellant physically demonstrated hiding behind the door of the house with a weapon. Appellant also told the officers where he disposed of the weapon.

Appellant was subsequently charged with attempted capital murder, burglary of a habitation, evading arrest with a vehicle, and unauthorized use of a motor vehicle. After jury selection, appellant moved to suppress his oral statement because the investigating officers improperly obtained an agreement from appellant to give a statement prior to advising appellant of his rights. In denying appellant's motion to suppress, the trial court found that appellant was properly advised of his rights between the time that the "purported agreement to make a statement was made and the actual taking of the statement."

3

At the end of the first day of testimony, appellant and the State reached an agreement for a plea bargain. Appellant agreed to plead guilty to two counts of burglary of a habitation in exchange for the State's recommendation of an eighteen-year sentence. The trial court certified appellant's right to appeal the denial of his pretrial motions. Appellant's original appeals were dismissed as untimely. *Rush v. State*, No. 14-09-00434-CR; 14-09-00453-CR; 14-09-00460-CR; 14-09-00462-CR (Tex. App.—Houston [14th Dist.] July, 9, 2009). The Court of Criminal Appeals granted appellant habeas corpus relief in the form of an out-of-time appeal.

In his sole issue on appeal, appellant argues the trial court erred in denying appellant's motion to suppress because officers secured appellant's agreement to custodial interrogation before advising him of his constitutional rights. Appellant filed a pro se motion to suppress prior to trial alleging his confession was involuntary because he was intoxicated. In his reply brief filed in this court, appellant emphasizes that his only complaint on appeal is that his confession was obtained after officers improperly obtained an agreement to give a statement. Therefore, we will confine our review appellant's issue raised on appeal.

## ANALYSIS

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Under this standard of review, we will uphold the trial court's ruling if it is reasonably supported by the record and is correct under any applicable legal theory. *Id.* The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give the trial court almost complete deference in determining historical facts, while reviewing de novo its application of the law to

4

those facts.  *State v. Ross*, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).

Appellant argues that the procedure used by the investigators in this case was "simply a variation on the two-stage interview process" rejected in *Missouri v. Seibert*, 542 U.S. 600, 602 (2003) and *Jones v. State*, 119 S.W.3d 766, 775–76 (Tex. Crim. App. 2003).  A "two-stage" interview process, otherwise known as a "question first, warn later" interrogation technique, consists of officers interrogating a suspect without providing *Miranda*[1] warnings and obtaining a confession; then, after inculpatory statements are made, officers provide *Miranda* warnings and obtain a waiver of the warnings.  *See Seibert*, 542 U.S. at 604–05.  Officers then have the suspect repeat the inculpatory statements in an attempt to cure the absence of *Miranda* warnings.  *See id*. at 605.

Prior to its opinion in *Seibert*, the Supreme Court determined that post-warning confessions made after inadvertent, minimal *Miranda* violations are admissible.  *Oregon v. Elstad*, 470 U.S. 298, 318 (1985).  The Court found that "a suspect who has once responded to unwarned yet uncoercive questioning is not thereby disabled from waiving his rights and confessing after he has been given the requisite *Miranda* warnings."  *Id.*  In upholding the admission of Elstad's post-*Miranda* statements, the Court concluded that there were "none of the earmarks of coercion" in that particular factual situation and that the officer's initial failure to warn was merely an "oversight."  *Id.* at 316.

In his concurring opinion in *Seibert*, Justice Kennedy determined that when a two-step interrogation technique is used in a deliberate, calculated way to undermine *Miranda* warnings, absent "curative measures," the post-warning statements must be excluded.  *Seibert*, 542 U.S. at 622 (Kennedy, J., concurring).  Unless a deliberate two-step strategy is employed, *Elstad* applies.  *Id.*  In *Carter v.*

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966).

*State*, 309 S.W.3d 31, 38 (Tex. Crim. App. 2010), the Court of Criminal Appeals expressly adopted Justice Kennedy's concurrence in *Seibert* requiring appellant to show that the interrogation is used in a deliberate, calculated way to undermine the *Miranda* warnings. The court also adopted "a highly deferential review—similar to our *Guzman* standard—of the question of an officer's subjective 'deliberateness' in the 'question first, warn later' context." *Carter*, 309 S.W.3d at 39.

Consequently, the question in this case is whether the evidence shows that Officer Martinez deliberately employed a two-step "question first, warn later" interrogation technique to circumvent appellant's *Miranda* rights. *See id.* at 38.

Among the factors the Supreme Court considered in determining that the "midstream" warnings were not sufficient to effectively comply with *Miranda* were the completeness and detail of the first, unwarned statement, the overlapping content of the two statements, the timing and setting of the two statements, the continuity of police personnel, and the degree to which the interrogator treated the second round of questioning as a continuation of the first. *Seibert*, 542 U.S. at 615.

In this case, the evidence shows that, prior to the *Miranda* warnings being given, the dialogue between Martinez and appellant was conversational. Martinez asked appellant whether appellant was willing to give a statement about what happened. He agreed to permit appellant to speak with his mother on the telephone after they were finished. Appellant answered officers' questions about his injuries and cooperated with the gathering of physical evidence. There was no evidence that Martinez exhibited hostile, aggressive, or threatening behavior toward appellant or that he intended to create a coercive environment.

Immediately after appellant agreed to make a statement, he was advised of his rights, asked if he understood them, and waived his *Miranda* rights. In this case, there is no evidence that Martinez deliberately employed a two-step

6

interrogation process in questioning appellant. Appellant did not make a statement prior to being advised of his rights, but agreed to speak with the officers.

Once a determination has been made that the pre-warning questioning was not part of a deliberate plan to undermine a suspect's *Miranda* protections, it is still necessary to determine if appellant's post-warning statements were voluntarily made. *Carter*, 309 S.W.3d at 41 (*citing United States v. Stewart*, 536 F.3d 714, 723 (7th Cir.2008) (when the interrogation process used was not a deliberate end run around *Miranda,* a trial court should determine "whether the initial unwarned confession would flunk the voluntariness standard of *Elstad* such that the taint would carry over to the second warned confession."). The factfinder must examine all of the circumstances and the course of police conduct in evaluating the voluntariness of those post-*Miranda* statements. *Carter*, 309 S.W.3d at 41.

In this case, the trial court found "that the right warnings were an intervening event in the interview process, intervening between the time that the purported agreement to make a statement was made and the actual taking of the statement." We find that the record supports this finding. A subsequent administration of *Miranda* warnings to a suspect who has given a voluntary but unwarned statement ordinarily should suffice to remove the conditions that precluded admission of the earlier statement. *Carter*, 309 S.W.3d at 42. Martinez administered appropriate *Miranda* warnings prior to questioning appellant. The facts of this case differ in that appellant did not give a confession prior to being advised of his rights, but merely agreed to give a statement. The fact that Martinez solicited an agreement to speak with appellant prior to administering the warnings does not "flunk the voluntariness standard of *Elstad*" such that the confession was tainted. Therefore, we agree with the trial court that appellant's post-warning statement was admissible. We overrule appellant's sole issue on appeal.

## CONCLUSION

Having concluded that the trial court did not abuse its discretion in denying appellant's motion to suppress, we affirm the trial court's judgment.


/s/    Tracy Christopher
Justice


Panel consists of Justices Christopher, Jamison, and McCally.

Do Not Publish — TEX. R. APP. P. 47.2(b).